A06A0375. KING v. LUSK et al.
(633 SE2d 350)

ANDREWS, Presiding Judge.
Pursuant to our grant of his discretionary appeal, Michael A. King appeals from the trial court's denial of his motion for new trial in the legitimation proceeding brought by Rodney C. Lusk regarding the child Ri. C. L.

The procedural posture of this case is as follows. On November 20, 2003, in Dade County, Lusk filed his petition to legitimate two children, Re. C. L., born April 24, 1999, and Ri. C. L., born November 17, 2001. The verified petition averred that Lusk and the mother of the two boys, Tammy Yvonne Herron-King (Herron-King), were never

---

[11] See OCGA § 9-15-14 (b).

married, but cohabited for a number of years and the two boys were born as a result of that relationship. Lusk was listed as the father on the birth certificates of both boys. The petition requested that the two boys be declared the legitimate children of Lusk, with the attendant rights and responsibilities attaching to Lusk, that temporary and permanent custody be given to Herron-King, and that Lusk be awarded temporary and permanent visitation with the boys.

The return of service reflects personal service was made on Herron-King at 4105 Old Federal Road in Chatsworth, Murray County, on November 26, 2003.

No answer or objection to the proceeding was filed by Herron-King. Following a hearing on December 18, 2003,[1] the Dade County Superior Court entered its temporary order on December 29, 2003, reflecting that Herron-King did not appear for the hearing, but that, following presentation of evidence, "[t]he Court finds as a matter of fact and matter of law that the plaintiff Rodney C. Lusk is the legal and biological father of [Re. C. L.] . . . and [Ri. C. L.]. . . . Therefore, the Court legitimates said children and declares them to be the children of Rodney C. Lusk." Custody was placed in Herron-King, visitation was granted to Lusk, and he was ordered to pay support for the two children of $75 per week, as well as all medical, dental, pharmaceutical, and optical expenses of the children.

On September 15, 2004, King filed his motion to intervene in the Dade County legitimation proceeding, requesting a chance to file his defenses and his "Petition for Custody" of Ri. C. L. Attached to the motion was his affidavit stating that he and Herron-King engaged in a relationship prior to February 1, 2001, resulting in the birth of Ri. C. L. on November 17, 2001, and that a DNA test performed on November 14, 2002, showed the probability of King's paternity of Ri. C. L. to be 99.9999 percent. The motion was granted by order of September 23, 2004.

On December 29, 2004, King's counsel filed his notice of intent to withdraw from the case, which was granted by order of January 28, 2005.

On January 17, 2005, the motion to intervene of the Department of Human Resources, Office of Child Support Enforcement, filed on behalf of Re. C. L. only, was granted.

On April 6, 2005, another temporary order was entered in the Dade County legitimation action reflecting that a hearing at which all of the parties appeared had been held on October 7, 2004,[2] during which counsel stated that King had filed a divorce proceeding against

---

[1] No transcript of this hearing is before us.

[2] There is no transcript of this hearing in the record before us.

Herron-King in Murray County. Although a transfer order had been entered in Murray County transferring the divorce case to Dade County, the file had not yet arrived. The temporary order in the divorce matter was being entered, nonetheless, by the Dade County Superior Court and, by the "consent of the parties, this Order shall be considered a temporary order in that divorce action."

In this order, Herron-King was again granted temporary custody of Ri. C. L. and it was ordered that any visitation by Lusk with this child would be by agreement of Herron-King and Lusk. King was granted visitation with Ri. C. L. on alternate weekends and some holidays. King was ordered to pay Herron-King weekly $60 as child support for Ri. C. L. and to maintain medical insurance on him. The previous temporary order in the legitimation case was amended only to the extent that Lusk was to pay $60 weekly child support for Re. C. L. only.

On April 8, 2005, a final order was entered in the legitimation case, based on a hearing conducted on February 24, 2005.[3]

In that order, the trial court found that Lusk had been involved with both Re. C. L. and Ri. C. L. during their lives, including activities, birthdays, and holidays, had established a paternal and family relationship with both boys, and had made all his child support payments. Additionally, the trial court found that King had been uninvolved with Ri. C. L. for the last one and one-half years except for the court-ordered visitation from October 2004, until the February 24, 2005 hearing and that King was in arrears on his child support.

Using the best interest of the child standard, the trial court again declared Lusk the legal father of Ri. C. L., granted custody to Herron-King, ordered Lusk to pay child support for both Re. C. L. and Ri. C. L., and granted visitation to Lusk for both boys.[4]

King then filed his motion for new trial, contending that the final order of legitimation was strongly contrary to law and not supported by the facts of the case.

In four enumerations, King argues that the trial court erred in failing to grant his motion for new trial because the trial court erred in holding King was not Ri. C. L.'s legal father, in finding that Lusk was his legal father, in applying the best interest of the child standard between Lusk, a third party, and King the biological and legal father, and in terminating King's parental rights without clear and convincing evidence.

The transcript of the motion for new trial hearing is before us and reveals, in addition to the facts set out above, that, according to

---

[3] There is no transcript of this hearing in the record before us.
[4] There was no dispute over the paternity of Re. C. L.

Herron-King, King did nothing during the period between Ri. C. L.'s birth and October 2002, to treat the child as his own. When asked if she and Lusk had been married, Herron-King responded: "No. Common law, yeah, I guess you would say, because we was together for ten years."

Although common-law marriages entered into on or after January 1, 1997, are not recognized in Georgia, common-law marriages entered into prior to January 1, 1997, are not affected and continue to be recognized. OCGA § 19-3-1.1. The period of Lusk and Herron-King's relationship began years before 1997.

> In order for a common-law marriage to come into existence, the parties must be able to contract, must agree to live together as man and wife, and must consummate the agreement. See OCGA § 19-3-1; *Fireman's Fund Ins. Co. v. Smith*, 151 Ga. App. 270 (1) (259 SE2d 675) (1979). "Whether a man and a woman have entered into a common law marriage is a question of fact." *Taylor v. Taylor*, 243 Ga. 506, 508 (255 SE2d 32) (1979). " '(T)he . . . fact of cohabitation is treated as essential, if not the main factor in establishing in this State a common-law marriage.' " *Fireman's Fund Ins. Co. v. Smith*, supra, 151 Ga. App. at 271.

*Ga. Osteopathic Hosp. v. O'Neal*, 198 Ga. App. 770, 777-778 (10) (403 SE2d 235) (1991).

We note this fact because, as stated above, none of the transcripts of the hearings held before the motion for new trial hearing are before us. Therefore, we cannot discern upon what premise[5] the trial court originally concluded that Lusk was the legal father of Ri. C. L. and granted his petition for legitimation.[6] In accordance with the presumption in favor of the regularity of court proceedings, we must assume that, in the absence of these transcripts, the trial court's findings are supported by sufficient competent evidence. *Kirkendall v. Decker*, 271 Ga. 189, 191 (516 SE2d 73) (1999); *Leitzke v. Leitzke*, 239 Ga. 17, 18 (1) (235 SE2d 500) (1977); *Brown v. Premiere Designs*, 266 Ga. App. 432, 434 (597 SE2d 466) (2004); *Burns v. Barnes*, 154 Ga. App. 802 (1) (270 SE2d 57) (1980). "This court is a court for the

---

[5] See *Baker v. Baker*, 276 Ga. 778 (582 SE2d 102) (2003); *Davis v. LaBrec*, 274 Ga. 5 (549 SE2d 76) (2001); *In re Baby Girl Eason*, 257 Ga. 292 (358 SE2d 459) (1987); *Turner v. Head*, 236 Ga. 483 (224 SE2d 360) (1976); *Bowers v. Pearson*, 271 Ga. App. 266 (609 SE2d 174) (2005); *Ghrist v. Fricks*, 219 Ga. App. 415 (465 SE2d 501) (1995); *Gregg v. Barnes*, 203 Ga. App. 549 (417 SE2d 206) (1992).

[6] There is nothing before us to indicate that Lusk had any reason to doubt that he was, as he averred in his petition to legitimate, the biological father of Ri. C. L. or that he was aware of King's involvement with Herron-King.

correction of errors and its decision must be made on the record and not upon the briefs of counsel." (Citation and punctuation omitted.) *Frank v. State of Ga.*, 257 Ga. App. 164, 165 (1) (570 SE2d 613) (2002).

King has failed to meet his burden of showing error by the record; therefore, we will not disturb the order of the trial court.

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED MAY 24, 2006 —
RECONSIDERATION DENIED JUNE 21, 2006 — 

*Johnny R. Dennis*, for appellant.
*William P. Slack, Christopher A. Townley*, for appellees.