644 S.E.2d 530 (2007)
In the Interest of C.L., a child.
No. A06A2490.
Court of Appeals of Georgia.
March 29, 2007.
*531 Stanley R. Durden, Bogart, for appellant.
Curtis Glen Shoemaker, Watkinsville, for appellee.
BARNES, Chief Judge.
This case arose after Jeff Newell, the biological father of C.L., filed a petition for legitimation and custody of the child against Brandy and Ralph Lloyd, the child's mother and legal father. The superior court granted Newell's legitimation petition, and transferred the custody issue to the juvenile court. That court considered whether Newell or Ralph Lloyd should have custody of C.L., and determined that it was in the child's best interest to grant joint custody to both men, with primary physical custody to Lloyd and visitation to Newell. Because Newell became the child's legal father when the superior court granted his legitimation petition, and our laws grant Ralph Lloyd no rights to custody in this situation, we reverse the juvenile court order and direct it on remand to award custody to Newell.
C.L. is the daughter of Brandy Lloyd who is married to Ralph Lloyd. On January 16, 2005, while married to Lloyd, Mrs. Lloyd gave birth to C.L., who was fathered by Jeff Newell. C.L. was immediately taken into DFACS custody because Mrs. Lloyd tested positive for cocaine. The juvenile court held a hearing on a deprivation petition on January 27, 2005, where Newell attempted to intervene to assert his paternity, but the court refused to allow him to participate in the proceeding. The court returned C.L. to the custody of Ralph Lloyd. Shortly afterward, Brandy Lloyd went to prison, where she remained throughout the proceedings in this case.
Within two months, Newell filed his petition for legitimation and custody in the superior court. After a DNA test confirmed that Newell was the biological father, the superior court granted Newell's petition for legitimation without determining whether it would be in the child's best interest. The court held that C.L. was the child of Newell and Brandy Lloyd, born out of wedlock under OCGA § 19-7-23(2). That statute defines a "child born out of wedlock" as a "child who is the issue of adulterous intercourse of the wife during wedlock." The court declared C.L. to be legitimate and capable of inheriting from Newell in the same manner as if born in lawful wedlock, and then transferred the custody issue to the juvenile court because it had previously considered the issue.
The juvenile court awarded joint custody to Newell and Ralph Lloyd, with primary physical custody to Lloyd and visitation to Newell. The court acknowledged that Lloyd was not one of the limited number of related third parties who may seek custody from a parent under OCGA § 19-7-1(b.1) (which lists grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent), but ruled that "applying such a rigid construction to the instant situation would ignore the unique and important role that Mr. Lloyd has played in [C.L.]'s life." Applying the "best interest of the child" standard set out in OCGA § 19-7-1(b.1), the juvenile court awarded joint custody of C.L. to Newell and Ralph Lloyd, with primary physical custody to Ralph Lloyd.
1. Newell contends that the juvenile court erred in its application of OCGA § 19-7-1(b.1), because Lloyd was not one of the limited number of related third parties who may seek custody from a legal parent. We agree. The unappealed legitimation order by the superior court found that C.L. was "born out of wedlock," and declared her to be the legitimate child of Newell under OCGA § 19-7-23(2). Once the court made that determination and Lloyd did not appeal the order, Newell became C.L.'s legal father in Lloyd's *532 place. Having allowed that decision to stand, Lloyd has no means of challenging Newell's custody as our law stands now.
This case illuminates the gaping hole in our family law regarding custody between a biological father and a legal father. The issue is not unusual, as shown by many appellate decisions.[1] Lacking clear statutory direction, the parties and the courts have been left to figure out the best way to address the issue. The parties and both courts in this case acted with the best of intentions, but because the former legal father is not given the same status as a "grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent" under OCGA § 19-7-1(b.1), the juvenile court is left with no discretion to determine which placement would be in the child's best interest. The biological father has already legitimated the child, presumably "replacing" the former legal father and becoming the legal father himself. The statutes do not contemplate a child having two legal fathers. Once C.L. was legitimately Newell's child, our statutes provide Lloyd with no standing to argue that the child's interest would be best served by continuing custody with him.
The decision in Baker v. Baker, 276 Ga. 778, 782, 582 S.E.2d 102 (2003), does not require a different result. The parties in Baker were in a different posture before the court. There, a husband and wife were getting a divorce, and the biological father intervened during the ensuing custody battle, seeking to legitimate the child and gain custody himself. In that context, the trial court was able to determine whether it was in the child's best interest to grant the biological father's legitimation petition and award custody to him or deny the petition and let the legal father remain the legal father.
What Baker and other appellate decisions make clear is that in determining whether to grant a legitimation petition, trial courts may consider the best interest of the child and deny the petition under certain circumstances, even if the petitioner is in fact the biological father of the child. See Id. at 780-781(2), 582 S.E.2d 102; Davis v. LaBrec, 274 Ga. 5, 7-8, 549 S.E.2d 76 (2001); Ghrist v. Fricks, 219 Ga.App. 415, 420-421(1), 465 S.E.2d 501 (1995). What those decisions do not permit, and what trial courts cannot do, is grant the legitimation petition and then treat the situation as one where the child has two legal fathers vying for custody, as was done in the present case.
We do not intimate an opinion as to which man would be the better parent for this child, but simply find that Lloyd had no standing to seek custody in this case. With the advent of DNA testing capable of determining paternity as a scientific fact, the old family paradigms have given way. Before we could compare DNA, a putative father had to overcome a high hurdle to replace the legal father. But we are now capable of determining with one blood test that the man married to the child's mother, even years after a child's birth, is not really the child's "father." Under this process, a man who parented a child all of the child's life could lose any right to custody to a biological father who has never even spoken to the child, through a procedural fault such as the one in this case.
Our law provides no clear process for resolving this issue, leaving some courts and parties straining to fit the new reality into the old legal structure. This deficiency results in tragedy for some and uncertainty for all. Only the legislature can fix this problem, by addressing how a nonbiological father may seek custody or at least visitation of a child he has raised and to whom he had bonded. For these reasons, we reverse the juvenile court's award of joint custody to Lloyd and Newell, and direct it on remand to award custody to Newell.
2. In view of our ruling in Division 1, the remainder of Newell's enumerations of error are moot.
*533 Judgment reversed and case remanded with direction.
JOHNSON, P.J., BLACKBURN, P.J., MILLER, J., ELLINGTON, J., and BERNES, J., concur.
ANDREWS, P.J., dissents.
ANDREWS, Presiding Judge, dissenting.
Because I disagree with the majority's interpretation of OCGA § 19-7-1(b.1) as not providing a means by which the original legal father may seek custody, I respectfully dissent.
This Code section provides:
Notwithstanding subsections (a) and (b) of this Code section or any other law to the contrary, in any action involving the custody of a child between the parents or either parent and a third party limited to grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent, parental power may be lost by the parent, parents, or any other person if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child or children and will best promote their welfare and happiness. There shall be a rebuttable presumption that it is in the best interest of the child or children for custody to be awarded to the parent or parents of such child or children, but this presumption may be overcome by a showing that an award of custody to such third party is in the best interest of the child or children. The sole issue for determination in any such case shall be what is in the best interest of the child or children.
OCGA § 19-7-1(b.1). As the original legal father of the child, I believe that Lloyd is a "parent" for purposes of this Code section. To interpret it otherwise means that once a legitimation petition is granted, if it is not in the best interest of the child for the legitimated father and the mother to have custody of the child, the child cannot remain in the home of the original legal parent, even though the child is well cared for and has bonded with that parent. In this case, it means that the child must be removed from her home and placed with strangers.
The Code section governing legitimation provides that the petition may also include claims for visitation or custody. OCGA § 19-7-22. Accordingly, the petition for legitimation and custody is one action, although in this case the superior court gave the decision on custody to the juvenile court. And, despite the mandate of the legitimation Code section, it appears that the superior court granted the legitimation petition after receiving the results of the paternity test and did not make any determination as to whether legitimation was in the child's best interest. There was no evidence on this issue at the hearing, and the order contains no finding as to the best interest of the child or the effect such a decision would have upon the child. See Ghrist v. Fricks, 219 Ga.App. 415, 420-421, 465 S.E.2d 501 (1995).
After granting the legitimation portion of the petition, the superior court transferred the case to the juvenile court to determine the issue of custody. The evidence at the custody hearing showed that Lloyd had cared for C.L. almost from the time of her birth, loved the child, and wanted to keep the family together until the mother was released from prison and could take steps to be reunited with her husband and child. There was also expert testimony that C.L. had closely bonded with Lloyd and could experience problems if taken from him.
There was evidence that it would not be in the child's best interest to be given to Newell, and there was evidence that Newell was not fit to care for or support the child by himself.
In the trial court's order awarding custody to Ralph Lloyd, the court held that Lloyd had been C.L.'s only caregiver, that he also cared for another child of Brandy Lloyd (C.L.'s mother), and that he took both children to visit with Brandy in prison and was maintaining a relationship for both children with their mother. The court concluded, relying on the "best interest of the child" standard set out in OCGA § 19-7-1(b.1), that it was in the best interest of C.L. to remain in the custody of Lloyd, the only father she had *534 ever known, and perhaps eventually be reunited with her mother.
Although Baker v. Baker, 276 Ga. 778, 582 S.E.2d 102 (2003), concerned a legitimation petition, I believe its reasoning is applicable in this case. "The law allowing the presumption of legitimacy to be rebutted was never intended to sever a child's ties with his or her legal father." Id. at 782, 582 S.E.2d 102. In Baker, it was the biological mother who sought to "delegitimize" the child from the legal father, after DNA evidence showed that he was not the biological father. Id. at 780, 582 S.E.2d 102. The trial court held that
even though it may be in the best interest of the child for [the legal father] to be the father, the best interest of the child is not the test in this situation. It would be a contradiction to say the presumption of legitimacy can be rebutted by clear and convincing evidence but it is in the best interest of the child not to rebut the presumption of legitimacy.
(Punctuation omitted.) Id.
The majority in Baker rejected this conclusion, stating "this Court has recently held that the `best interests of the child' standard should be applied when a party seeks to delegitimize a legitimate child and to break up an existing legally recognized family unit already in existence." (Punctuation omitted.) Id. The court noted that the legal father had developed a parental relationship with the child since her birth and had accepted the responsibilities of fatherhood. Id. at 781, 582 S.E.2d 102. The Court held that because the underlying action sought delegitimation and the dissolution of a family unit already in existence, the interests of all parties concerned were best protected by application of the best interest of the child standard. Id.
The dissent in Baker points out that this decision "oversteps the bounds of judicial action" because the "legislature enacted a standard to be applied in every case in which paternity of a child born in wedlock is challenged, a strong presumption of legitimacy which can be overcome by clear and convincing proof." Id. at 784, 582 S.E.2d 102. The majority in this case makes this same argument, contending that OCGA § 19-7-1(b.1) provides no standing for the original legal father once the child has been legitimated by the biological father. Although this interpretation of the statute appears to be legally correct and is the more well-reasoned approach, I believe that the Supreme Court considered and rejected this position in Baker.
Veal v. Veal, 281 Ga. 128, 636 S.E.2d 527 (2006), is instructive. In that case, unlike the instant one, the husband and wife were not married until after the child was born and both were aware that the husband was not the biological father. The Supreme Court acknowledged that it was unfortunate that the husband, as a step-parent, could not seek custody of the child against the wishes of the biological mother. Id. at 129, 636 S.E.2d 527. In doing so, the Court distinguished this case from Baker, stating, "Although the husband in Baker was not the biological father of the child, he was considered the `legal father,' and this Court determined that the `best interests of the child' standard should be employed to determine the custody arrangements for the child." Id. at 129, 636 S.E.2d 527.
In light of the above, I would hold that Lloyd had standing to seek custody under OCGA § 19-7-1(b.1) as a "parent" under the Code section and the juvenile court correctly decided this case under the "best interest of the child" standard and concluded that custody should remain with Lloyd. As the presumptive legal father, Lloyd has developed a parental relationship with the child since her birth; was voluntarily named the child's father on the birth certificate; has lived with the child as father and daughter since birth; has fully accepted the responsibilities of fatherhood; and has developed deep familial and psychological bonds with the child through daily association. See Baker, supra at 781, 582 S.E.2d 102.
NOTES
[1] See, e.g., Veal v. Veal, 281 Ga. 128, 129, 636 S.E.2d 527 (2006); Baker v. Baker, 276 Ga. 778, 779(1), 582 S.E.2d 102 (2003); Davis v. LaBrec, 274 Ga. 5, 7, 549 S.E.2d 76 (2001); King v. Lusk, 280 Ga.App. 40, 633 S.E.2d 350 (2006); Ghrist v. Fricks, 219 Ga.App. 415, 420-421(1), 465 S.E.2d 501 (1995); Brooks v. Carson, 194 Ga.App. 365, 367(2), 390 S.E.2d 859 (1990), overruled on other grounds by Mayor etc. of Savannah v. Norman J. Bass Constr. Co., 264 Ga. 16, 17(1), 441 S.E.2d 63 (1994).