**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-1768**

NANCY MESTEY NEW, on behalf of D.J.M. and K.N.M.,

Plaintiff - Appellant,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Greenville. R. Bryan Harwell, District Judge. (CA-03-3949-6)

Argued: March 25, 2010          Decided: April 16, 2010

Before WILKINSON and MOTZ, Circuit Judges, and Joseph R. GOODWIN, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Gwendolyn Steele Fortson Waring, Savannah, Georgia, for Appellant. Christopher Gene Harris, SOCIAL SECURITY ADMINISTRATION, Atlanta, Georgia, for Appellee. **ON BRIEF:** W. Walter Wilkins, United States Attorney, Robert F. Daley, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Nancy Mestey New ("New") appeals a district court decision affirming the decision of the Commissioner of Social Security (the "Commissioner") to terminate the child's insurance benefits ("CIB") of her children K.N.M. and D.J.M. As explained below, we affirm.

I.

A.

New and Angel Mestey ("Mestey") married in 1965, and separated in 1980. New gave birth to K.N.M and D.J.M. in 1982 and 1983, respectively. D.J.M.'s birth certificate lists Mestey as the father; K.N.M.'s birth certificate is not in the record.[1] New and Mestey divorced in 1985. New and Mestey's divorce decree does not mention D.J.M. or K.N.M., although it does mention other children born during the marriage.

Paternity tests performed on Mestey in 1989 revealed that he could not possibly be D.J.M.'s biological father. There is no record of such a test with regard to K.N.M. In contrast, paternity testing performed on another man, Derrick Faison ("Faison"), also in 1989, indicated a 97.11% probability that he

_____

[1] Although D.J.M.'s birth certificate lists Mestey as the father, there is no evidence that Mestey gave written consent to have his name entered.

2

is D.J.M.'s father and a 99.55% probability that he is K.N.M.'s father.

In 1994, Mestey applied for and received military identification cards and insurance benefits for D.J.M. and K.N.M. And, in 1995, he filed for Social Security disability benefits, listing them as his dependents. Mestey died intestate on January 2, 1996, in Savannah, Georgia.

On January 18, 1996, based on Mestey's earnings record, New applied for CIB from the Social Security Administration ("SSA") on behalf of D.J.M. and K.N.M. SSA granted these applications, and D.J.M. and K.N.M. received CIB through February 2000.

## B.

On March 29, 2000, SSA notified New that it had determined that D.J.M. and K.N.M. were not Mestey's children, and that benefits had been overpaid to them.

On January 22, 2002, the Probate Court of Chatham County, Georgia entered a "Final Order of the Court Determining Heirs" (the "probate court order"). That order ruled that D.J.M. and K.N.M. are "the heirs at law and dis[tr]ibutees of the said Angel Manuel Mestey, deceased, and are entitled to participate in the division of his estate." J.A. 101. [2]

---

[2] Citations to "J.A. __" refer to the Joint Appendix filed by the parties on appeal.

Seeking to appeal the SSA determination that D.J.M. and K.N.M. were not entitled to Mestey's CIB, New requested and was granted a hearing before an Administrative Law Judge ("ALJ"). After conducting a hearing on June 25, 2002, the ALJ determined that D.J.M. and K.N.M. were not entitled to CIB. On October 16, 2003, the Appeals Council of the Social Security Administration affirmed the ALJ's decision. The Appeals Council decision became the final decision of the Commissioner.

On December 15, 2003, New filed a complaint in the District of South Carolina, challenging the Commissioner's decision. The case was referred to a federal magistrate judge. On December 20, 2004, the Magistrate Judge issued his Report and Recommendation (the "Report"), recommending that the district court affirm the Commissioner's decision. The district court adopted the Report and entered judgment in favor of the Commissioner on June 22, 2005. New timely appealed.

We possess subject matter jurisdiction pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291.

II.

We must uphold the Commissioner's factual determinations if they are supported by substantial evidence and were reached by applying the correct legal standard. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner's

4

legal conclusions, however, are reviewed de novo.  See <u>Lewis v.</u>
<u>Barnhart</u>, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam).


III.

New contends that the Commissioner's decision was erroneous
and that D.J.M. and K.N.M. are entitled to CIB.  In the
alternative, she maintains that the district court should have
certified the issue to the Supreme Court of Georgia.  We address
each contention in turn.

A.

To qualify for CIB, a claimant must be a "child" of an
insured individual.  42 U.S.C. § 402(d).  New asserts that
D.J.M. and K.N.M. each qualify as a child of Mestey's under two
separate statutory provisions:  42 U.S.C. §§ 416(h)(2)(A) and
(h)(3).

1.

New first asserts that D.J.M. and K.N.M. qualify for CIB
under 42 U.S.C. § 416(h)(2)(A).  To determine whether a claimant
is a "child" of an insured individual under that section, the
Commissioner must apply state law.  More specifically, he must
apply "such law as would be applied in determining the
devolution of intestate personal property by the courts of the
State" in which the insured individual lives or lived at the
time of his death.  42 U.S.C. § 416(h)(2)(A).  "Applicants who

5

according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such." Id.

Here, there is no dispute that D.J.M. and K.N.M. are not Mestey's biological children. Our inquiry thus focuses on whether they nevertheless qualify as Mestey's heirs under Georgia intestacy law. New contends that D.J.M. and K.N.M. are Mestey's heirs under Georgia law because (1) they were born to the marriage; and (2) a Georgia probate court has declared them to be Mestey's heirs. As explained below, each of these arguments lacks merit.

a.

First, New asserts that D.J.M. and K.N.M. are entitled to a presumption that they are Mestey's children, because they were born while New and Mestey were married. Therefore, she argues, they are Mestey's heirs under Georgia law.

New is correct that Georgia presumes that children born during a marriage are the children of the married couple, Simeonides v. Zervis, 172 S.E.2d 649, 651 (Ga. Ct. App. 1969), and that the children of an intestate parent are the heirs of that parent, Ga. Code Ann. § 53-2-1(c)(1). But Georgia intestacy law also provides that "[a] child born out of wedlock may not inherit from or through his father . . . unless, during the lifetime of the father and after the conception of the

6

child" one of five conditions have been met.  These conditions are satisfied if

> (i) A court of competent jurisdiction has entered an order declaring the child to be legitimate . . .;
>
> (ii) A court of competent jurisdiction has otherwise entered a court order establishing paternity;
>
> (iii) The father has executed a sworn statement signed by him attesting to the parent-child relationship;
>
> (iv) The father has signed the birth certificate of the child; or
>
> (v) There is other clear and convincing evidence that the child is the child of the father.

Ga. Code Ann. § 53-2-3(2)(A).

Georgia law defines "out of wedlock" to include "[a] child who is the issue of adulterous intercourse of the wife during wedlock."  Ga. Code. Ann. § 19-7-23.  Although D.J.M. and K.N.M. were born while New and Mestey were married, they were clearly born "out of wedlock" — they were "the issue of adulterous intercourse of the wife during wedlock."  Therefore, D.J.M. and K.N.M. must satisfy one of the conditions of section 53-2-3(2)(A) to qualify as Mestey's heirs.

None of these conditions, however, have been satisfied in this case.  No court order has been entered declaring the children legitimate or establishing Mestey's paternity.[3]  The

---

[3]  The probate court order simply states that K.N.M. and D.J.M. are "the heirs at law and dis[tr]ibutees of the said (Continued)

7

record contains no sworn statement executed by him attesting to the parent-child relationship.[4]  And while Mestey's name appears on D.J.M.'s birth certificate, and may have appeared on K.N.M.'s birth certificate, there is no evidence that he ever gave written consent for his name to appear.  Finally, there is no clear and convincing evidence that either D.J.M. or K.N.M. is Mestey's child.

Aside from this, New argues that, rather than focusing solely on biological parenthood, the Commissioner should have applied a "best interest of the child" standard to determine whether the children were Mestey's heirs.  This argument is fatally flawed.  The best-interest-of-the-child standard is a test applied in Georgia domestic relations law.  Georgia domestic relations law, however, generally does not impact questions of intestacy.  Cf. Crowther v. Estate of Crowther, 574 S.E.2d 607, 610 (Ga. Ct. App. 2002); Rodriguez v. Nunez, 555 S.E.2d 514, 518 (Ga. Ct. App. 2001).  Because the Commissioner

---

Angel Manuel Mestey."  J.A. 101.  It is silent, however, regarding paternity.

[4] New argues that Mestey "acknowledged the children in writing," and thus satisfied section 53-2-3(2)(A), because he listed D.J.M. and K.N.M. as dependents on his military and Social Security benefit applications.  Br. of Appellant 8-9.  Although these actions may indicate some acceptance of paternity by Mestey, they are not the "sworn statements" required by Georgia law.

was constrained to apply Georgia intestacy law, 42 U.S.C. § 416(h)(2), he did not err in refusing to apply the best-interest standard.

In short, New has presented no evidence that D.J.M. and K.N.M. are Mestey's heirs under Georgia law. The Commissioner, therefore, did not err in concluding that the children are not entitled to CIB under § 416(h)(2).[5]

b.

Second, New argues that D.J.M. and K.N.M. are entitled to take as children of Mestey under Georgia law, because a Georgia probate court has declared them to be Mestey's heirs. The Commissioner considered this argument and determined that, in light of the facts before him, the probate court order conflicted with Georgia law and was entitled to no weight.

In Cain v. Sec'y of Health, Educ. & Welfare, we recognized that § 416(h) requires the Commissioner to apply "the law of the state as it has been declared by the Supreme Court of the state." 377 F.2d 55, 58 (4th Cir. 1967). If the issue has not been resolved by the state's highest court, however, the Commissioner "may follow the opinion of a nisi prius court; but

---

[5] New also argues that the children were Mestey's children under Georgia law because he never disavowed paternity, and because the children's biological father never legitimated the children. These arguments have no basis in the law and must be rejected.

9

if he believes its decision to be in conflict with what the Supreme Court 'would find' were the point presented to it, he may disregard that lower court's decision." Id. (emphasis added).

Cain compels us to affirm the Commissioner's decision. We are presented only with the probate court order — the Supreme Court of Georgia has not weighed in on this point. As a result, the Commissioner was free to disregard the probate court order if he concluded that it conflicted with what the Georgia Supreme Court "would find." As explained above in Part III.A.1.a. of this Opinion, under Georgia intestacy law, neither D.J.M. nor K.N.M. is Mestey's heir. The probate court order thus contradicts what the Supreme Court of Georgia would find, and it was not entitled to any weight. The Commissioner's decision to disregard the probate court order, therefore, was not error.

### B.

Next, New contends that D.J.M. and K.N.M. qualify for benefits under 42 U.S.C. § 416(h)(3). That section does not require an examination of state law. Rather, it calls for an inquiry of, inter alia, whether the insured individual "had acknowledged in writing that the applicant is his or her son or daughter," "had been decreed by a court to be the mother or father of the applicant," or "had been ordered by a court to

10

contribute to the support of the applicant because the applicant was his or her son or daughter." 42 U.S.C. § 416(h)(3)(C)(i).

New argues that D.J.M. and K.N.M. are entitled to CIB under § 416(h)(3)(C), because Mestey "acknowledged in writing" that they are his children, by listing them in his application for Social Security and military benefits. The Commissioner responds that New has waived this claim by failing to raise it in her objections to the Magistrate Judge's Report.

A party "waives a right to appellate review of particular issues [in a magistrate judge's report] by failing to file timely objections specifically directed to those issues." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007). To preserve an issue for appeal, an objection must have "sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

In her objections to the Report, New addressed neither § 416(h)(3)(C) or its parallel regulation, 20 C.F.R. § 404.355(a)(3). See J.A. 46-54. New failed to file objections "specifically directed to" this issue and thus waived this claim on appeal.

C.

Finally, New argues that the district court abused its discretion by declining to certify to Georgia's highest court

11

the question of whether D.J.M. and K.N.M. are Mestey's heirs. We disagree.

The decision of whether to certify a question to the highest court of a state "in a given case rests in the sound discretion of the federal court." Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974). We have counseled that "[o]nly if the available state law is clearly insufficient should the court certify the issue to the state court." Roe v. Doe, 28 F.3d 404, 407 (4th Cir. 1994).

According to New, "[t]he district court erred in finding that the instant case does not involve an unsettled question of state law. Georgia case law continues to evolve in determining the rights of biological versus legal fathers of children born to a marriage." Br. of Appellant 18 (internal citation omitted). New refers to In re C.L., 644 S.E.2d 530, 532 (Ga. Ct. App. 2007), which concerned a custody dispute between a legal father and a biological father, and which discusses "the gaping hole in our family law regarding custody between a biological father and a legal father."

With respect to inheritance law, however, New presents no record of Georgia courts grappling over whether to apply a "legal" or "biological" standard. Indeed, as discussed above, the very concept of "legal father" is absent from the inheritance statutes; those statutes seem to address purely

12

biological rather than "legal" parenthood. Moreover, the public policy concerns that have animated some domestic relations cases, such as the importance of keeping families together, are irrelevant when the non-biological father is deceased. It is difficult to see why the courts of Georgia would depart in this circumstance from the general statutory scheme and case law precedent of determining inheritance on the basis of biological parenthood.

Since the district court was able to predict how the courts of Georgia would rule in this case, it did not abuse its discretion by declining to certify this case to the Supreme Court of Georgia.

IV.

For the reasons explained above, we affirm.

<u>AFFIRMED</u>

13