S03A0123. BAKER v. BAKER.
(582 SE2d 102)

SEARS, Presiding Justice.

We granted appellant Matt Baker's discretionary application to determine whether the "best interest of the child" standard should apply where a biological mother has essentially sought to delegitimize her child and prevent the legal and presumptive father from asserting any of the rights associated with parenthood in conjunction with the couple's divorce action. Under the circumstances of this case, we determine the "best interest of the child" standard is appropriate to protect the interests of all the parties concerned. Therefore, we reverse the trial court's contrary ruling and remand this matter for further proceedings.

Matt Baker and Tina Baker met in February 1996. At that time, Tina was approximately two months pregnant with a child by another man, Samples, who was imprisoned at the time of the child's birth and currently remains in prison under a sentence scheduled to end in 2011.

When her pregnancy was confirmed, Tina informed Matt of the situation. Matt and Tina married in June 1996, and the child was born three months later. It is undisputed that Matt provided both financial and emotional support to Tina throughout her pregnancy, was listed with Tina's consent on the child's birth certificate as the child's father and has always provided financial and emotional support for the child, even going so far as to make non-court-ordered child support payments to Tina after the couple's separation.

Matt filed for divorce on August 13, 1997, and also sought custody of the child. Tina answered by arguing that Matt is not the child's biological father and hence could not make a claim for custody. Samples moved to intervene, also seeking to challenge Matt's status as legal father. The trial court ordered both Sample's and Matt's DNA to be tested, and it was confirmed that Matt is not the child's biological father. The trial court agreed with Matt that it was in the child's best interest that he continue to be the child's father. Nonetheless, the trial court ruled that the "best interest" standard is not applicable to this situation. Without considering the child's best interests, the trial court found that Tina had rebutted the presumption of legitimacy raised by the child's birth during marriage. The trial court then found Matt was not the biological father and the marriage was irretrievably broken. Accordingly, in May 2002, a divorce was granted and Matt's request for custody was denied. This Court then granted an application to appeal in order to determine whether the trial court erred in holding that Matt could not be considered the child's legal father and whether Matt could seek custody of the child. For the reasons explained below, we reverse.

1. All children born in wedlock are deemed under law to be legitimate.[1] A child's legal father is defined as the man married to the biological mother at the time the child was conceived or born, unless such paternity is disproved by final court order.[2] Where a child is legitimate, the father has a claim to parental and custodial rights to the child.[3] The public policy favoring the presumption of a child's legitimacy is one of the most firmly-established and persuasive precepts known in law.[4] The legitimacy of a child born in wedlock

---

[1] OCGA § 19-7-20 (a).
[2] OCGA § 19-8-1 (6).
[3] *Mitchell v. Ward*, 231 Ga. 671, 672 (203 SE2d 484) (1974).
[4] *Miller v. Miller*, 258 Ga. 168, 169 (366 SE2d 682) (1988).

may, however, be disputed by clear and convincing proof.[5] Accordingly, the trial court in this case was faced with a situation where the birth mother of a child presumed to be legitimate due to birth during marriage sought delegitimation by claiming that her husband at the time of birth, although the child's legal father, was not the biological father. Based upon the DNA evidence, which clearly identified the child's parentage, the trial court concluded that Matt is not the child's biological father.

2. That conclusion, however, leaves open the question of whether the "best interests of the child" standard should apply in disputes like this, where paternal delegitimation is sought by a birth mother yet opposed by the legal father. In its order, the trial court found that "there are not many men who will want to be the father of a child who he knows is not his child and the mother openly tells him she does not want him to be the father of the child. [Matt] Baker not only continued to seek to be the father of the child [in this case], but also provides child support without a court order." The court then held that "even though it may be in the best interest of the child for Matt Baker to be the father, [the] best interest of the child is not the test in this situation. . . . It would be a contradiction to say the presumption of legitimacy can be rebutted by clear and convincing evidence but it is in the best interest of the child not to rebut the presumption of legitimacy."

We disagree with the trial court's conclusions. In cases similar to this one, this Court has recently held that the "best interests of the child" standard should be applied when a party seeks to "delegitimize a legitimate child and to break up an existing legally recognized family unit already in existence."[6] In *Davis v. LaBrec*,[7] a man, LaBrec, and a woman were unmarried but personally involved when the woman gave birth to a child fathered by a different man, Davis. LaBrec was present at the birth, was named on the child's birth certificate as the father, and obtained a court order legitimating the child as his own — all with the support of the child's biological mother. When the mother attempted suicide, LaBrec sought full legal and physical custody of the child. The biological father, Davis, then sought to set aside the earlier determination of legitimacy naming LaBrec as the father, and to legitimate and obtain custody of the child. This Court held that the trial court erred by concluding that if

---

[5] OCGA § 19-7-20 (b). This Code section also provides that where a woman is pregnant by another man at the time of marriage and a divorce is later granted on that ground, the presumption of legitimacy is vanquished. That scenario does not exist under the facts of this case, however.

[6] *Davis v. LaBrec*, 274 Ga. 5, 7 (549 SE2d 76) (2001).

[7] Id.

Davis was in fact the biological father and was determined to be a fit parent, it was required to grant his legitimation petition.[8] We first recognized that because LaBrec had officially legitimized the child, Davis's petition sought both delegitimation and to dissolve a family unit already in existence.[9] We also noted that LaBrec had voluntarily developed a parental relationship with the child since his birth; was voluntarily named the child's father on the birth certificate; lived with the child as father and son since birth; accepted the full responsibilities of fatherhood by providing traditional care and maintenance; and developed deep familial and psychological bonds with the child "that 'stem from the emotional attachments that derive from the intimacy of daily association.' "[10] Under these circumstances, we found that the "best interests of the child" standard should be applied when considering Davis's petition seeking to delegitimize the child.[11]

The circumstances of the present matter are remarkably similar to those involved in *Davis v. LaBrec*. Unlike LaBrec, Matt Baker did not obtain an official court order legitimizing the child as his own, but such an action was unnecessary since (again, unlike LaBrec) Matt was married to the biological mother at the time of birth; hence, Matt was the child's legal father and legitimation was presumed. Beyond that single distinguishing feature, this case, too, involves a situation where a presumptive, legal father has developed a parental relationship with a child since her birth; was voluntarily named the child's father on the birth certificate; has lived with the child as father and daughter since birth; has fully accepted the responsibilities of fatherhood; and has developed deep familial and psychological bonds with the child through daily association. The underlying action also seeks delegitimation and the dissolution of a familial unit already in existence. Accordingly, consistent with the reasoning and holding of our decision in *Davis*, under the circumstances of this case we find that the interests of all the parties concerned are best protected by application of the "best interest of the child" standard.[12] It follows that the trial court erred by ruling that the child's best interest was not a proper consideration when deciding the challenge to Matt's status as legal father, and that ruling is hereby reversed.

3. We also disagree with the trial court's reasoning that "it would be a contradiction to say the presumption of legitimacy can be rebutted by clear and convincing evidence but it is in the best interest of

---

[8] 274 Ga. at 6-7.

[9] 274 Ga. at 7.

[10] 274 Ga. at 7, quoting *Lehr v. Robertson*, 463 U. S. 248, 261 (103 SC 2985, 77 LE2d 614) (1983).

[11] Id.

[12] See *Davis*, 274 Ga. at 7.

the child not to rebut the presumption of legitimacy." As the trial court noted in its order, this case presents an unusual set of facts in that it involves a legal father who, despite knowing he is not the child's biological father and that the biological mother no longer wants him to be considered the father, nonetheless has made non-court-ordered child support payments to the mother and has made serious and prolonged efforts to maintain his parental relationship with the child. In light of these factors, we believe it is not contradictory to say that although the Code provides the means for the presumption of legitimacy to be rebutted, the trial court should consider the child's best interests when deciding whether to permit the legal father's status to be challenged by a rebuttal of the presumption of legitimacy.[13] The law allowing the presumption of legitimacy to be rebutted was never intended to sever a child's ties with his or her legal father.[14] In fact, the Code sections discussed in Division 1, supra, were primarily intended to provide for the establishment rather than the dissolution of legitimacy and paternity. Moreover, our "public policy will not permit a mother . . . to enlist the aid of the courts to disturb the emotional ties existing between a child and his legal father after sitting on [her] rights for the first [phase] of the child's life."[15]

4. We discern an incongruity in the law as it applies to mothers and legal fathers in this situation, and it is worth noting. Our Code does not address situations where, as here, the biological mother seeks to delegitimize a child who is presumed under law to be legitimate. However, the Code does makes provision for situations where a father who is paying child support seeks to set aside a determination of paternity, thereby delegitimizing a child he wrongly believed to be his child, in order to end his support obligations.[16] In that scenario, a presumed father must clear a very high hurdle, as he is required to show the following: (1) that genetic testing has determined he is not the child's biological father; (2) that he has not adopted the child; (3) that the child was not conceived by artificial insemination while he and the biological mother were married; (4) that he has not acted to prevent the biological father from asserting his parental rights; (5) that he has not married the biological mother and voluntarily assumed the obligation to pay child support; (6) that he has not made a sworn statement he is the father; (7) that he is not voluntarily listed on the child's birth certificate as the child's father; (8) that he has not made a written voluntary statement to support the child; (9)

---

[13] See id.

[14] *Ghrist v. Fricks*, 219 Ga. App. 415, 419 (465 SE2d 501) (1995).

[15] Id.

[16] OCGA § 19-7-54.

that he has not proclaimed himself to be the child's biological father; and (10) that he has not ignored official notice to submit to genetic testing.[17] Unless all these showings are made, a child support obligor seeking to delegitimize a child will not succeed and will continue making child support payments.[18]

In this case, the record shows that Matt Baker married Tina, the biological mother, before she gave birth and assumed an obligation to pay child support without a court order; was voluntarily listed on the child's birth certificate as the child's father; and proclaimed himself to be the child's biological father — all with the full knowledge and support of the child's mother. Accordingly, upon the couple's separation, if Matt had sought to delegitimize the child and thereby end his obligation to pay child support, our Code would instruct that his claim be denied and that he be required to continue making support payments.[19] Yet, despite her full support of Matt's presumptive and legal fatherhood throughout her pregnancy and the couple's marriage, Tina's request for paternal delegitimation was granted solely on the basis of DNA testing that showed Matt is not the biological father. Chief among our concerns with this troublesome incongruity is the fact that under the Code, a legal father's claim for delegitimation takes into account the best interests of the child, whereas (as shown in this particular case), a biological mother's claim for delegitimation can be decided with no inquiry regarding what may be in the child's best interests. While our opinion today is intended to help remedy this situation, we also urge the legislature to examine it as soon as possible.

5. We agree with the trial court's commendation of legal fathers who honor their responsibilities to the children who look up to them as parents. This is especially true in situations where, as here, the legal father and the child's mother have separated or divorced. The law should serve as a means of ensuring that in such cases, the well-being of the child is protected and remains of paramount concern. Therefore, for all of the reasons discussed above, we conclude that the trial court erred in failing to consider the best interests of the child when determining whether the mother, Tina Baker, should be allowed to challenge Matt Baker's status as legal father (i.e. — to delegitimize the child). Accordingly, this matter is reversed and remanded for application of the "best interest of the child" standard to Tina's challenge to Matt's status as legal father and for further proceedings consistent with this opinion.[20]

---

[17] OCGA § 19-7-54 (a), (b).
[18] OCGA § 19-7-54 (c).
[19] Id.
[20] As for the motion to intervene filed by the biological father, Samples, the trial court

*Judgment reversed and case remanded. All the Justices concur, except Benham, Carley and Hines, JJ., who dissent.*

BENHAM, Justice, dissenting.

Because the majority opinion oversteps the bounds of judicial action, setting this Court above, rather than co-equal with, the legislature by applying a judicially-imposed standard to determine whether trial courts should follow statutory procedures instituted by the General Assembly, I must dissent.

The essence of the majority opinion's holding is that although Mr. Baker's status as legal father is only presumptive and may be rebutted by clear and convincing evidence, the question of whether the issue of actual paternity can be considered at all is to be decided by application of the "best interests of the child" standard. While every issue touching a child's life should, in a more nearly perfect world, be governed by consideration of the best interests of the child, we are constrained as an appellate court to apply the law as it is, not to make law as we believe it should be. That is the role of the legislature, and the legislature has performed its role and established a standard to be used when the paternity of a child is questioned. The statutory standards do not allow for an initial determination of which parent's recognition would be in the best interests of the child before determining who is, in fact, the actual legal parent. Had the General Assembly intended such a threshold determination to be made, it would have provided for it. Instead, the legislature enacted a standard to be applied in every case in which paternity of a child born in wedlock is challenged, a "strong presumption" of legitimacy which can be overcome by clear and convincing proof.[21]

The majority opinion characterizes this case as one "where a biological mother has essentially sought to delegitimize her child and prevent the legal and presumptive father from asserting any of the rights associated with parenthood," but this is actually no more than a divorce case in which the trial court has been presented with an issue for which the legislature has provided a mechanism and a standard by which the issue is to be decided. The majority's superimposi-

---

granted the motion in 2002. Samples sought delegitimation of the child from her legal father and to have himself declared the legitimate father. Samples elected not to appeal the court's final ruling. On remand, Samples's claims will be controlled by our decision in *Davis v. LaBrec*, supra, however. See notes 6-12, supra, and accompanying text.

[21] (a) All children born in wedlock or within the usual period of gestation thereafter are legitimate.

(b) The legitimacy of a child born as described in subsection (a) of this Code section may be disputed. Where possibility of access exists, the strong presumption is in favor of legitimacy and the proof must be clear to establish the contrary. . . .

OCGA § 19-7-20.

tion of a "best interests of the child" test on the statutory procedure for determining paternity, while admirably solicitous of the best interests of children, ignores the fact that the law which we are sworn to uphold recognizes certain rights in the biological parents of a child. I speak not of rights of ownership, for we can all agree that children are not chattel, but of the right to be recognized as a parent and to participate in the child's life. The biological father of the child in issue here has intervened, apparently in an effort to assert just such an interest in the child's life, but the majority opinion disposes of his interest in a footnote with a citation which is asserted to control his interest.

That citation is to *Davis v. LaBrec*, 274 Ga. 5 (549 SE2d 76) (2001), in which this Court applied a "best interests of the child" standard to a case in which the biological mother engaged in a fraudulent course of conduct. The majority also relies on *Ghrist v. Fricks*, 219 Ga. App. 415 (465 SE2d 501) (1995), a case involving even more egregious fraud than did *Davis*, supra. There, both biological parents engaged in fraudulent conduct regarding paternity while maintaining a years-long adulterous affair. Those cases represent aberrations, not the norm. In addition, while there is a great deal of dicta in *Ghrist* about the best interest of the child, the result was reached in only a few paragraphs based on collateral estoppel. The present case is not like those cases. There is no fraud here, as there was in both those cases. This is a divorce case, in which the dissolution of the family unit is the object, whereas the others were efforts from without to disrupt familial relations. In those cases, the appellate courts crafted new approaches because they were presented with facts that did not fit well within existing statutory processes. Here, where the conduct is not so reprehensible and the case is one for which the legislature has provided, imposing the "best interests of the child" standard to the possible exclusion of the procedures established by the General Assembly amounts to the exception swallowing the rule.

The majority opinion embarks on a perilous course in this case, usurping the policy-making prerogative of the General Assembly and elevating subjective value judgments above the considered and legally-adopted procedures that govern domestic matters. Because I believe this Court is stepping well beyond its bounds in this case, I must dissent.

I am authorized to state that Justice Carley and Justice Hines join in this dissent.

DECIDED JUNE 2, 2003 —
RECONSIDERATION DENIED JULY 11, 2003.

*McArthur & McArthur, John J. McArthur*, for appellant.
*W. Roy Finch III*, for appellee.