**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 24, 2022**

# In the Court of Appeals of Georgia

A22A0532. JEFFERSON v. O'NEAL.

GOBEIL, Judge.

Alvin Jefferson appeals from the trial court's grant of a legitimation petition filed by Cyprus O'Neal. Jefferson contends that the trial court erred in: (1) granting the legitimation petition when the minor child already had a legal father, who was unaware of the child's surreptitious conception; and (2) failing to deny the legitimation petition under the doctrine of collateral estoppel. For the reasons set forth below, we vacate the trial court's order, and remand the case for additional proceedings consistent with this opinion.

The record in this case shows that Jefferson and Kawanna Jefferson ("Kawanna") were married in 1999 and were still married in 2011, when the minor child at issue, K. J., was born. Jefferson, however, is not K. J.'s biological father.

According to Kawanna, K. J.'s biological father is O'Neal. In April 2020, O'Neal filed a petition for legitimation. In the petition, O'Neal stated that K. J. was currently living with him and Kawanna. O'Neal alleged that he "is a loving and supportive father, who [has been] continually involved with the child since her birth[,]" and that legitimation would be in K. J.'s best interest.

No answer from Jefferson appears in the record. However, the parties appeared at a hearing on February 18, 2021. After hearing from counsel, the trial court spoke to K. J. in chambers, off the record. Kawanna and O'Neal also testified at the hearing. Kawanna explained that, when K. J. was born, Kawanna believed that K. J. was Jefferson's daughter. She did, however, have an affair with O'Neal during the marriage to Jefferson, and eventually discovered that K. J. was O'Neal's biological child. Kawanna admitted that she kept the affair secret from Jefferson. After she informed O'Neal about the discovery, he immediately began to establish a relationship with K. J. Jefferson and Kawanna divorced, and their divorce judgment awarded custody of K. J. to Kawanna and Jefferson jointly, but Jefferson was not responsible to pay child support for K. J. Kawanna believed that Jefferson would consent to Jefferson's petition to legitimate K. J. At the time of the hearing, Kawanna

2

lived with O'Neal, along with K. J. and another one of hers and Jefferson's children. O'Neal testified similarly.

After the hearing, the trial court issued an order granting the legitimation. The court found that a DNA test had confirmed that O'Neal was K. J.'s biological father. The court found that O'Neal "did not abandon his opportunity interest" in the child, as he was unaware that K. J. could be his biological child before 2019. Further, the court spoke to K. J., who stated that O'Neal was her father. Based on these findings, the court concluded that O'Neal set forth sufficient facts to "allow him to be the legal father" of K. J. The court stated that it considered the child's best interests, "which is the standard to apply when deciding whether to permit the legal father's status to be challenged by a rebuttal of the presumption of legitimacy." The court went on to find that "this case is not prohibited by public policy" because O'Neal did not abandon his opportunity interest in K. J., and because it was in K. J.'s best interest to grant the petition for legitimation. Therefore, the court declared O'Neal to be K. J.'s legal father. The court also noted that it was in K. J.'s best interest to not "cut off any reasonable ties with" Jefferson, stating that the child should not be cut off from basketball, where Jefferson is involved in coaching, and if K. J.'s maternal

grandparents allow it, Jefferson may be able to visit with K. J. at their home, if K. J. so desires. This appeal followed.[1]

Under OCGA § 19-7-22 (d) (1), following a hearing on a legitimation petition, "the court may issue an order declaring the biological father's relationship with the child to be legitimate, provided that such order is in the best interests of the child." On appeal, "[w]e review a trial court's ruling on a legitimation petition for abuse of discretion, but the court's factual findings are reviewed for clear error and will be sustained only if there is competent evidence to support them." *Belliveau v. Floyd*, 359 Ga. App. 475, 476 (858 SE2d 763) (2021) (citations and punctuation omitted).

The legitimation statute requires that, if the child to be legitimated already has a legal father who is not the biological father, the legal father must be served with the petition for legitimation and be given an opportunity to be heard. OCGA § 19-7-22 (c). As the Supreme Court explained in *Brine v. Shipp*, a "biological father's petition to legitimate a child who was born in wedlock is in essence a petition to terminate the parental rights of the legal father." 291 Ga. 376, 379 (3) (729 SE2d 393) (2012).[2]

---

[1] We granted Jefferson's application for discretionary appeal. Case No. A22D0037 (Sept. 22, 2021).

[2] *Brine* relied upon the former version of OCGA § 15-11-28 to conclude that the superior court did not have jurisdiction to terminate a legal father's parental rights

Accordingly, "a superior court normally could not grant a biological father's legitimation petition without first terminating the legal father's parental rights." *Mathenia v. Brumbelow*, 308 Ga. 714, 720 (3) (a) n. 10 (843 SE2d 582) (2020). And, as we have recognized in many cases, the threshold for terminating a legal father's parental rights is high. "The public policy of this state favoring the institution of marriage and the legitimacy of children born during a marriage is the strongest public policy recognized by law." *Ghrist v. Fricks*, 219 Ga. App. 415, 418 (1) (465 SE2d 501) (1995), overruled on other grounds by *Brine*, 291 Ga. at 380 (3). Therefore, a higher standard applies in legitimation cases where the child has an existing legal father, and the trial court is required to consider the best interests of the child. *Baker v. Baker*, 276 Ga. 778, 780 (2) (582 SE2d 102) (2003).

Here, the trial court concluded that (1) O'Neal had not abandoned his opportunity interest in the child and (2) it was in K. J.'s best interests to grant O'Neal's petition for legitimation. However, the trial court did not explicitly terminate Jefferson's parental rights before granting the legitimation. And it is not

in a legitimation proceeding. 291 Ga. at 380 (3). However, OCGA § 15-11-28 has since been replaced by OCGA § 15-11-10 (3) (D), which the Supreme Court explained has expanded the superior courts' jurisdiction to terminate parental rights in this context. *Mathenia v. Brumbelow*, 308 Ga. 714, 718-720 (3) (a) (843 SE2d 582) (2020).

5

clear from the order whether the trial court believed that it was in K. J.'s best interest to do so, as the court also found that it was in K. J.'s best interest to maintain "reasonable ties" with Jefferson. Accordingly, where the trial court's order failed to terminate the legal father's parental rights before granting the biological father's legitimation petition, and is unclear as to what it finds is in the child's best interest, we vacate the trial court's order, and remand this case. *Mathenia*, 308 Ga. at 720 (3) (a) n. 10. Upon remand, the trial court is directed to make explicit whether it finds it to be in K. J.'s best interest to terminate Jefferson's rights, and upon what evidence it makes such a finding.

Although we hold that the trial court's order must be vacated and the case remanded, we will consider Jefferson's arguments to the extent that they raise issues "likely to recur on remand." See *Baldwin v. Vineyard*, 275 Ga. 134, 135 (1) (562 SE2d 174) (2002) (although appellant's enumerations of errors may be rendered moot by the Court's decision to remand, we may address them if they are likely to recur upon remand).

First, Jefferson argues that O'Neal was barred from asserting a legitimation claim for K. J. because she already had a legal father and K. J.'s surreptitious conception was concealed from Jefferson. Jefferson's reliance on *Matthews v. Dukes*,

6

314 Ga. App. 782, 785-786 (1) (726 SE2d 95) (2012), overruled in part by *Brine*, Ga. at 380 (3), for this argument is unavailing. *Matthews* held that

> the public policy of our state forbids the assertion of an *Eason* "opportunity interest" by a third party whose adulterous conduct has resulted in a presumptively legitimate child being born within an existing family — at least when that third party knowingly and fraudulently conceals his involvement from the legal father and takes no steps to claim the child as his own.

314 Ga. App. at 785-786 (1). The reference to an "*Eason* opportunity interest" comes from *In re Baby Girl Eason*, 257 Ga. 292, 297-298 (358 SE2d 459) (1987), the case that established that a biological father has an opportunity interest to develop a relationship with his child which may be abandoned by the father if not timely pursued. However, under the facts of this case, where there was no finding of fraud or deceit by O'Neal, and where the trial court found that O'Neal did not abandon his opportunity interest in the child due to his recent discovery of his relation to her, the holding in *Matthews* does not require a different result. Accordingly, the trial court's rejection of this argument raised by Jefferson at the hearing, was not an abuse of discretion. *Mathenia*, 308 Ga. at 715 (1) (we review the trial court's decision on a

legitimation petition for abuse of discretion, and factual findings shall not be set aside unless clearly erroneous).

Jefferson's other argument on appeal — that collateral estoppel bars O'Neal from legitimating the child — also fails. First, there is no identity of the parties as required by that doctrine. See *Vanterpool v. Patton*, 352 Ga. App. 584, 588 (2) (835 SE2d 407) (2019) ("In Georgia, the collateral estoppel doctrine precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions.") (citation and punctuation omitted). O'Neal was not a party to the divorce action between Jefferson and Kawanna, and is not bound by the judgment.

Further, although Jefferson argues that K. J.'s legitimacy was "implicitly adjudicated" in the divorce decree, we do not agree. Jefferson's status as K. J.'s legal father was not granted in the divorce action, but was automatic as a result of her birth while he was married to her mother. OCGA § 19-7-20 (a); see also OCGA § 19-7-22 (a) (2) (B). Georgia law explicitly permits a biological father to legitimate a child who already has a legal father, so long as the trial court applies the proper standard and finds that it is in the child's best interest to terminate the legal father's parental rights

and grant parental rights to the biological father. See OCGA § 19-7-22; *Mathenia*, 308 Ga. at 718-719 (3) (a). These issues were not considered in the divorce action, and we conclude that collateral estoppel does not apply in this situation. Cf *Ghrist*, 219 Ga. App. at 417-418 (1) (applying collateral estoppel to prevent mother from contesting the paternity of her child, when she alleged in divorce action that child was the issue of her marriage).

Accordingly, although we conclude that Jefferson's enumerations of error are without merit, we nonetheless vacate the trial court's order and remand this case for the trial court to decide in the first instance the termination of Jefferson's parental rights.

*Judgment vacated and case remanded with direction. McFadden, P. J., and Pinson, J., concur*.