**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 24, 2025**

# In the Court of Appeals of Georgia

A24A1759. MARQUEZ v. AGUIRRE.

WATKINS, Judge.

Rafael Aguirre filed a petition to legitimate his biological child, G. M. The child's legal father, Raynier Marquez — who has been married to G. M.'s mother at all times relevant to this proceeding — objected to the legitimation. After a hearing, the trial court granted Aguirre's legitimation petition, terminated Marquez's parental rights, and entered a parenting plan. Marquez appeals the trial court's judgment, arguing that the trial court erred by applying a "best interests of the child" standard when deciding whether to terminate his parental rights. For the reasons that follow, we affirm.

On appeal from a legitimation ruling, the appellate court accepts the trial court's factual findings if there is any evidence to support them and will not interfere with the trial court's ruling absent an abuse of discretion.[1]

Viewed in this manner, the record shows that the child's mother, Yesly Tavera, had an extramarital relationship with Aguirre that lasted approximately 18 months. G. M. was born in June 2020, and Tavera's husband, Marquez, was listed as the father on the child's birth certificate. In November 2020, however, a DNA test indicated that Aguirre is the child's biological father. Aguirre filed a petition for legitimation in December 2020, asking the court to recognize him as the child's legal father, award him custody, and terminate Marquez's parental rights. Both Tavera and Marquez responded with objections to Aguirre's petition.

In January 2022, the trial court entered a temporary order documenting the parties' agreement that Aguirre had not abandoned his opportunity interest in a relationship with G. M., that a guardian ad litem ("GAL") would be appointed, and that Aguirre would have visitation with the child on a weekly basis.

---

[1] See *Mathenia v. Brumbelow*, 308 Ga. 714, 715 (1) (843 SE2d 582) (2020).

After hearings at which Aguirre, Marquez, and the GAL testified, the trial court entered an order granting Aguirre's petition for legitimation, awarding him joint legal custody, and ordering him to pay child support. The order also terminated Marquez's parental rights. On that issue, the trial court stated as follows:

> This child has an opportunity to have two father figures who love him dearly and who wish to provide him with nurturing care and support in all its parental forms. In addition, the child can experience the intense love of the broader families of these two men. That opportunity only exists, however, if the Court terminates Marquez's parental rights. Absent that termination, the child will likely never know the love that Aguirre and his family have to offer. If the Court terminated Marquez's parental rights, it changes only his legal status to the child. Instead of being a legal father, Marquez will be the child's step-father. Thus, the child would be doubly blessed by an incredibly loving father and step-father. The child will be able to benefit from the loving influence of both men. In terminating Marquez's parental rights, the child loses nothing of significance but gains tremendous benefits. *Therefore, the Court finds by clear and convincing evidence that it is in the minor child's best interest to terminate the parental rights of his legal father, Respondent Marquez.* The Court HEREBY TERMINATES the parental rights of Raynier Marquez.[2]

---

[2] (Emphasis added.)

We granted Marquez's application for discretionary review, and he filed this appeal.

On appeal, Marquez contends the trial court erred by failing to consider the required statutory grounds for terminating a parent's rights. He emphasizes that Georgia's Dependency Code[3] and Adoption Statute[4] both identify specific grounds upon which a court may terminate a parent's rights, and he contends that Aguirre should have been required to prove the existence of at least one of those grounds by clear and convincing evidence before his parental rights could be terminated. We disagree.

As Marquez himself acknowledges, this case involves neither dependency nor adoption; instead, it involves what is colloquially referred to as "delegitimation." Thus, it is governed by the Legitimation Statute, OCGA § 19-7-20 et seq.,[5] rather than by the Dependency Code or the Adoption Statute. And as we recognized in *Jefferson v. O'Neal*, the Legitimation Statute "explicitly permits a biological father to legitimate a child who already has a legal father, so long as the trial court applies the proper

---

[3] OCGA § 15-11-310.

[4] OCGA § 19-8-11.

[5] See *Jefferson v. O'Neal*, 364 Ga. App. 23, 26 (873 SE2d 481) (2022).

4

standard and finds that it is in the child's best interest to terminate the legal father's parental rights and grant parental rights to the biological father."[6]

In support of his contention that a best-interest standard does not apply in this context, Marquez relies on *Jefferson*, in which we stated as follows.

> The legitimation statute requires that, if the child to be legitimated already has a legal father who is not the biological father, the legal father must be served with the petition for legitimation and be given an opportunity to be heard. OCGA § 19-7-22 (c). As the Supreme Court explained in *Brine v. Shipp*, a biological father's petition to legitimate a child who was born in wedlock is in essence a petition to terminate the parental rights of the legal father. Accordingly, a superior court normally could not grant a biological father's legitimation petition without first terminating the legal father's parental rights. And, as we have recognized in many cases, the threshold for terminating a legal father's parental rights is high. The public policy of this state favoring the institution of marriage and the legitimacy of children born during a marriage is the strongest public policy recognized by law. Therefore, a higher standard applies in legitimation cases where the child has an existing legal father, and the trial court is required to consider the best interests of the child.[7]

---

[6] 364 Ga. App. at 26 (punctuation omitted).

[7] 364 Ga. App. at 24-25 (citations and punctuation omitted) (citing *Mathenia*, 308 Ga. at 720 (3) (a) n. 10; *Brine v. Shipp*, 291 Ga. 376, 379 (3) (729 SE2d 393) (2012); *Baker v. Baker*, 276 Ga. 778, 780 (2) (582 SE2d 102) (2003); *Ghrist v. Fricks*, 219 Ga. App. 415, 418 (1) (465 SE2d 501) (1995), overruled on other grounds by *Brine*, 291 Ga.

We are not persuaded by Marquez's argument. Importantly, while *Jefferson* recognized the state's policy of favoring the legitimacy of children born during a marriage, it did not hold that a biological father's request for delegitimation may be granted only if the legal father is shown to be unfit. Indeed, all of the cases cited in *Jefferson* applied a best-interests-of-the-child standard — including *Baker*, where the Supreme Court expressly held that "the 'best interests of the child' standard should be applied when a party seeks to delegitimize a legitimate child and to break up an existing legally recognized family unit already in existence."[8]

In light of this precedent, we are not persuaded by Marquez's argument that the trial court could only "delegitimate" his relationship with G. M. if it concluded that one of the statutory grounds for the termination of parental rights, as set forth in the Dependency Code and the Adoption Statute, was present. And because Marquez has not shown that the trial court committed reversible error, we affirm the trial court's decision.

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur.*

---

at 380 (3)).

[8] 276 Ga. at 780 (2) (citation and punctuation omitted).