**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 6, 2021**

# In the Court of Appeals of Georgia

A21A1142. POE et al. v. CANTRELL.

RICKMAN, Chief Judge.

Jay and Heather Poe, the foster parents of the child at issue, bring this appeal from the trial court's orders denying their petition to adopt the child. On appeal, the Poes argue that the trial court erred when it found that Randy Cantrell was his daughter's legal father and when it denied the Poes' petition to adopt her. We find no error and affirm.

The relevant facts are not in dispute.[1] Cantrell and the mother of the daughter at issue were living together at the time of the daughter's conception. The daughter was born in August 2017. At that time, the couple was together, with Cantrell

---

[1] The Poes' initial brief fails to provide record citations for many of its assertions of fact, in violation of Court of Appeals Rule 25 (a) (1).

acknowledging paternity and appearing as the child's father on her birth certificate. The couple married in February 2018, and their son was born in September 2018. The mother later testified, however, that due to her incarceration and drug habit, she did not know who the biological father of the daughter was, but that it was not Cantrell.

Cantrell and the mother had histories of illegal drug use, including methamphetamine, as well as domestic violence. In March 2019, the couple's two children were taken into the custody of the Floyd County Division of Family and Children Services ("DFACS") and eventually placed with the Poes, who had previously adopted the daughter's half-sibling. In June 2019, both children were found to be dependent, with Cantrell allowed the possibility of reunification upon completion of a plan. From August 2019 through the COVID-19 pandemic's course to the summer of 2020, Cantrell appeared at all his appointments and completed counseling on parenting, anger management, addiction, and domestic violence. Cantrell also paid all ordered child support, although some payments were not timely.

On March 25, 2020, and immediately after being released from jail, the mother surrendered her rights in both children. In April 2020, the Poes filed a petition to

adopt the daughter.[2] In June 2020, the Poes amended their petition to include evidence of a DNA test suggesting that the daughter was not Cantrell's biological child. After a hearing, the trial court ordered Cantrell to submit to DNA testing, but it soon rescinded that order and entered a new finding, dated July 9, 2020, that Cantrell was the daughter's legal father. The trial court reasoned that under OCGA § 19-8-1 (11) (C), Cantrell had achieved that status because he had "not surrendered or had terminated his rights" and had "married [the] legal mother . . . after [the] child was born and recognized [the] child as his own," and because his paternity had not previously been "disproved by a final order of a court of competent jurisdiction." The trial court also held that under OCGA § 19-7-43 (governing petitions to establish paternity), the Poes lacked standing to contest Cantrell's status as his daughter's legal father. As a result, the trial court denied the Poes' request that Cantrell submit to DNA testing.

In July 2020, the Poes filed a motion for a declaratory judgment and for reconsideration of the trial court's finding of legal paternity. On the day after the Poes filed their motion, however, and in light of Cantrell's success in completing his

_____

[2] The Poes filed a separate petition to adopt the boy, but decided not to appeal the denial of that petition because they recognized Cantrell as the boy's biological as well as legal father.

3

reunification plan, the Department dismissed its dependency petition, and both children were returned to Cantrell's custody. After an emergency hearing, the trial court returned the children to the Poes, giving Cantrell unsupervised overnight visitation.

A hearing on adoption, which the Poes acknowledged would require termination of Cantrell's parental rights, was held in August 2020. Mrs. Poe testified at the hearing that the daughter returned from visitation exhibiting poor hygiene, fear of men, misbehavior at daycare, and night terrors, and the child's therapist agreed that the daughter was "terrified" of all men, including Cantrell. The evidence also showed, however, that Cantrell had a steady job and that he, his mother and his sister were capable of supporting and supervising both children. At a second hearing, the trial court reopened evidence for the purpose of investigating two minor injuries – a cut and a carpet burn – suffered by the son after his August 2020 visitation with Cantrell. The trial court found, however, that these injuries were not "intentionally caused by anyone" and "substantially healed by the following weekend."

On appeal, the Poes assert that the trial court erred when it determined that Cantrell was his daughter's legal father, when it refused to reconsider its order denying their request that Cantrell submit to DNA testing, and when it denied their

petition for adoption. We disagree with these contentions, which implicate the law of adoption, termination, custody, and legitimation.

"A child may be adopted by a third party who is neither the stepparent nor relative of that child . . . *only if* each living parent and guardian of such child has voluntarily and in writing surrendered all of his or her rights to such child to that third party. . . ." (Emphasis supplied.) OCGA § 19-8-5 (a). No such surrender occurred here. OCGA § 19-8-10 (a) also provides in relevant part, however, that a "surrender or termination" of parental rights

> shall not be required as a prerequisite to the granting of a petition for adoption of a child . . . *when the court determines by clear and convincing evidence that the (1) [c]hild has been abandoned by that parent. . . .* or (5) *[p]arent, without justifiable cause, has failed to exercise proper parental care or control* due to misconduct or inability, as set out in paragraph (3), (4), or (5) of subsection (a) of Code Section 15-11-310 [setting out the statutory grounds for termination of parental rights], *and* the court is of the opinion that the adoption is in the best interests of that child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home.

(Emphasis supplied.)

The Poes do not assert error as to whether Cantrell's parental rights should have been terminated, and the record shows that the trial court properly considered whether Cantrell had "abandoned" his daughter or "failed to exercise proper parental care or control" as set forth in OCGA § 19-8-10 (a). When Cantrell fulfilled the requirements of his reunification plan, DFACS dismissed its dependency petition, and the trial court explicitly held, with evidence supporting its decision, that the daughter's previous dependency was not likely to continue. See OCGA § 15-11-310 (a) (5) (dependency is a state caused by "lack of proper parental care or control"). By statute, the trial court's conclusion that the dependency was not likely to continue mooted any inquiry into the best interests of this child. OCGA § 19-8-10 (a) (even in the absence of a surrender or termination, an adoption petition may be granted only when *both* parental abandonment or failure is proven by clear and convincing evidence *and* the best interests of the child are served).

This record and the relevant law also support the trial court's findings that Cantrell is his daughter's legal father and that the Poes have no standing to assert otherwise. OCGA § 19-8-1 (11) defines a "legal father" as

> a male who has not surrendered or had terminated his rights to a child and who: (A) [h]as legally adopted such child; (B) [w]as married to the

biological mother of such child at the time such child was born or within the usual period of gestation, unless paternity was disproved by a final order of a court of competent jurisdiction; (C) *[m]arried a legal mother of such child after such child was born and recognized such child as his own, unless paternity was disproved by a final order of a court of competent jurisdiction*; *or* (D) [h]as legitimated such child by a final order pursuant to Code Section 19-7-22.

(Emphasis supplied.) And OCGA § 19-7-43 provides in relevant part:

(a) A petition to establish the paternity of a child may be brought by: (1) [t]he child; (2) [t]he mother of the child; (3) [a]ny *relative* in whose care the child has been placed; (4) [t]he *Department of Human Services in the name of and for the benefit of a child* for whom public assistance is received or in the name of and for the benefit of a child not the recipient of public services whose custodian has applied for services for the child; or (5) [o]ne who is alleged to be the father.

(Emphasis supplied.)

Finally, the legitimation statute, OCGA § 19-7-20, provides:

(a) All children born in wedlock or within the usual period of gestation thereafter are legitimate.

(b) The legitimacy of a child born as described in subsection (a) of this Code section may be disputed. Where possibility of access exists, the strong presumption is in favor of legitimacy and the proof must be clear

7

to establish the contrary. If pregnancy existed at the time of the marriage and a divorce is sought and obtained on that ground, the child, although born in wedlock, will not be legitimate.

(c) *The marriage of the mother and reputed father of a child born out of wedlock and the recognition by the father of the child as his shall render the child legitimate*[.]

(Emphasis supplied.) Our Supreme Court has summarized this law as follows:

All children born in wedlock are deemed under law to be legitimate. A child's legal father is defined as the man married to the biological mother at the time the child was conceived or born, unless such paternity is disproved by final court order. *Where a child is legitimate, the father has a claim to parental and custodial rights to the child.* The public policy favoring the presumption of a child's legitimacy is one of the most firmly-established and persuasive precepts known in law.

(Citations omitted; emphasis supplied.) *Baker v. Baker*, 276 Ga. 778, 779 (1) (582 SE2d 102) (2003).

Cantrell became the legal father of this child by operation of law when he married the mother after the child was born and recognized her as his own. See *Baker v. Langford*, 306 Ga. App. 327, 329 (1) (702 SE2d 666) (2010) (a man who was married to a child's biological mother at the time of birth was not required to obtain

8

a court order to legitimate the child), citing *Baker*, supra, 276 Ga. at 779 (1). Having thus become the child's legal father, Cantrell "stands in the same position as any other parent and possesses the same custodial rights with respect to the child." (Citation omitted.) *Davis v. LaBrec*, 274 Ga. 5, 7 (549 SE2d 76) (2001). The trial court also correctly concluded that Cantrell's marriage to the mother rendered the child legitimate because his paternal status was not *previously* disproved by a final court order. See OCGA § 19-8-1 (11) (C). Under these circumstances, the trial court properly vacated its earlier order that Cantrell submit to DNA testing because such testing could not have provided relevant evidence.[3]

Further, foster parents such as the Poes are not included in the categories of persons and organizations authorized to bring a paternity petition, and thus have no

---

[3] Our Supreme Court's decision in *Veal v. Veal*, 281 Ga. 128 (636 SE2d 527) (2006) is distinguishable: the husband and wife in *Veal* "knew all along that husband was not [the child's] biological father," id. at 128, whereas Cantrell acknowledged the child as his own at birth and married the mother shortly afterward, with some evidence that he was not the biological father emerging only after these events. When Cantrell acknowledged the child and the mother married him without raising any dispute about his biological status, the trial court had no choice but to award custody to the only relative before it rather than any foster parent. See OCGA § 19-8-5 (a) ("A child may be adopted by a third party who is neither the stepparent nor relative of that child . . . *only if* each living parent and guardian of such child has voluntarily and in writing surrendered all of his or her rights to such child to that third party" (emphasis supplied).

standing to contest the trial court's determination that Cantrell is the daughter's legal father. See OCGA § 19-7-43 (a); *Wallace v. Chandler*, ___ Ga. App. ___ (859 SE2d 100) (2021) (non-relative foster parents had no standing to petition for sole custody of a child of an incarcerated mother when the mother had not lost her right to custody). Our recent decision in *Wallace* is in accordance with longstanding law that a trial court has no discretion to make a custody award to a non-relative unless the parent has lost parental control. See *Woods v. Martin*, 212 Ga. 405, 405-406 (2) (93 SE2d 339) (1956) (some evidence of abandonment did not "prove [a] clear and strong case[,] which the law requires," that a father had lost parental control); *Drummond v. Fulton County Dept. of Family and Children Services*, 237 Ga. 449, 450 (1) (228 SE2d 839) (1976) (foster parents had no standing to contest DFACS's discretion, as children's legal custodian, to give or refuse consent to a petition for adoption); *Clark v. Wade*, 273 Ga. 587, 597 (IV) (544 SE2d 99) (2001) ("OCGA § 19-7-1 (b.1) expressly limits third parties who may seek custody to a specific list of the child's closest relatives, including an adoptive parent.").

For all these reasons, the trial court did not err when it found that Cantrell was his daughter's legal father, when it denied the Poes' request that he submit to DNA testing, and when it denied the Poes' petition to adopt the child.

*Judgment affirmed. McFadden, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*